NEW YORK PRACTICE REPORTS. **269**

Conkling agt. Secor Sewing Machine Company *et al.*

# SUPREME COURT.

## FREDERICK A. CONKLING agt. THE SECOR SEWING MACHINE COMPANY *et al.*

*Mortgage by manufacturing corporation — Consent necessary — Pledgor — Pledgee — Sale of property "subject to what may be due upon a mortgage" — action in another state — Injunction when refused.*

A stockholder of a corporation knowing of the existence of a mortgage upon its property, caused to be sold under an execution issued by him upon a judgment in his favor against the corporation, all the right, title and interest of the corporation in and to the property covered by the mortgage, "subject to whatever sum might be due upon the property by virtue of the mortgage," and himself purchased on the sale for a trifling sum.

*Held,* that the purchaser could not dispute the fact of the mortgage nor its validity.

Whether a corporation can itself join in the consent necessary to create a valid mortgage, under chapter 481, Laws of 1871, when the stock upon which its consent is based, has been pledged by it to a creditor as security for a debt, *quære?* Rights of pledgor and pledgee considered.

When an action for the foreclosure of a mortgage, made by a corporation, is pending in *another* state, to which action a judgment creditor of the corporation is a party defendant, who has by his answer, interposed as a defense the invalidity of the mortgage, a court of equity in *this* state will not, upon the same grounds, disclosed in such answer, interfere by injunction at the creditors' instance, to enjoin the holders of the mortgage from prosecuting their action in another state, nor will it affirmatively decree the mortgage to be void. The question must be litigated in the action first brought.

Equity disfavors a multiplicity of suits for the same substantial ends, and when full relief can be had in one action, another for the same object should not be allowed. Reasons for the application of such rules in this case, stated in the opinion.

*Special Term, April,* 1878.

THIS is an action by a judgment creditor to set aside, as void, a mortgage made by the defendant corporation, upon the ground that the requisite consent of its stockholders to its creation had not been obtained, and also to restrain the holders of the mortgage from prosecuting an action for its foreclosure pending in the state of Connecticut.

*Davis & Whitehead* and *Henry E. Davis*, for plaintiff.

*Paddock & Cannon* and *Franklin A. Paddock*, for defendants.

VAN VORST, *J.* — I do not think it necessary to decide whether the mortgage sought to be canceled is invalid.

An action for its foreclosure is now pending in the courts of the state of Connecticut, and the plaintiff herein is a defendant in that action, and has interposed an answer thereto setting up the invalidity of the mortgage upon the grounds stated in his complaint herein. - It may be regarded as a serious question whether the corporation could join in the consent necessary to create a valid mortgage, when a portion of the stock held by it, and upon which its assent is based, has been issued, and pledged to, and was held by a creditor as a security for the payment of a debt.

It may well be claimed that the pledgee is the owner of the stock for the purpose of giving a valid assent to the creation of a mortgage under chapter 481, Laws of 1871. Otherwise his security might be wholly destroyed by the creation of a mortgage upon the corporation property. The legal title to 240 shares of the stock upon which the corporate assent to the mortgage was based was in the plaintiff. He was the owner of it, and would so continue until the debt was paid, and the stock redeemed. It is true that by section 17, chapter 40, Laws of 1848, the person who should pledge his stock may represent the same and vote upon it as a stockholder at *all meetings* of the company; from, which it is argued that

Conkling agt. Secor Sewing Machine Company *et al.*

the pledgor may assent to a mortgage, and is the proper person to do so. The question is not free from doubt, but I do not propose to pass upon the validity of the mortgage.

The fact, however, that the existence of the mortgage was known to the plaintiff as early as March, 1875, at a meeting of stockholders called to consider the affairs of the company, and the increase of its capital stock, is. not without significance.

Many of the bonds secured by the mortgage had been turned over to creditors; upon others moneys were raised by the corporation, a portion of which was used to reduce the plaintiff's debt against the corporation.

Pending the action in the court in Connecticut for the foreclosure of the mortgage, the injunction which had been issued therein restraining the sale of the property, was so far modified as to allow the mortgaged property to be sold under the plaintiff's execution.

At this time the plaintiff had not answered in that action, and it does not appear that, up to this time, he had challenged the goodness of the mortgage. He had taken no steps to contest it.

On the 4th day of May, 1877, the officer who held the execution in the plaintiff's favor, sold at public auction, after due notice, all the right, title and interest of the corporation defendant, in and to the property covered by the mortgage.

The same was sold " subject to whatever sum might be due upon said property by virtue of the mortgage." This must be regarded as the plaintiff's act. It was a proceeding on his judgment. The property was purchased by the plaintiff for the sum of seven dollars and fifty cents, on a sale under an execution in his favor. I think if it was intended, at the time the property was sold, to dispute the validity of the mortgage, the plaintiff, who was present at the sale with his counsel, should then have announced such intention. If the mortgage itself was questioned, it should have been so stated. The statement that the sale was made subject to what might

Conkling agt. Secor Sewing Machine Company *et al.*

be due, raises an implication that there was or might be some thing due.

Mr. Beers, the counsel for the plaintiff, present at the sale, says "it was not sold subject to the face of the mortgage, which would be for the sum of $100,000; that it was sold and was, at the time of the sale stated, subject to whatever sum might be due on the mortgage; the amount at the time was unknown." In this there is no suggestion that the mortgage was claimed to be invalid.

Had the validity of the mortgage itself been questioned; had it been stated, as I think it should have been, that it was claimed to be invalid, and would be wholly resisted, the property would presumably have brought a larger price.

According to the inventory, a large amount of machinery and other personal property was sold for a trifle, subject only, as aforesaid. The fact that the property brought no greater price, leads to the conclusion that it must have been believed at the sale that some considerable sum was due and collectible on the mortgage.

The officer who made the sale, executed and delivered to the plaintiff, on his purchase, a bill of sale, in which it is expressed that the sale was made "subject to whatever sum may be due upon a mortgage of the said property to trustees for the benefit of the bondholders."

There are cases which hold that under such a qualified purchase, the vendee cannot dispute the fact of the mortgage or its validity. *Hardin* agt. *Hyde* (40 *N. Y.*, 435) expresses that view (*Freeman* agt. *Auld*, 44 *N. Y.*, 50). There are other decisions in the same direction, but I do not consider it important to press this point further.

*Carpenter* agt. *Simmons* (1 *Robt.*, 360) is supposed to hold a contrary doctrine, but I do not think it does. MONELL, J., says (*p.* 375) "He did not purchase subject to the mortgage." The bill of sale in this case, I think, indicates that the plaintiff so purchased. Without deciding that the plaintiff is absolutely estopped, in every event, and in all courts, from

questioning the validity of the mortgage, I do not think that this action discloses proper grounds for equitable relief in this court.

In the action pending in a sister state for the foreclosure of the mortgage, the injunction in which was modified to allow the sale under the plaintiff's judgment, the question raised by his answer, interposed to that action, may properly be litigated by the plaintiff. It is, however, for that court to decide what may be there litigated. I do not think that the prosecution of that suit can be interfered with by the judgment of this court; nor do I think that the defendant should be any longer restrained by injunction from prosecuting their suit in Connecticut.

I do not see how we can well or properly interfere with that litigation of which the Connecticut court has acquired jurisdiction. And an adjudication in Connecticut adverse to the legality of the mortgage, all the parties in interest being before the court, would be final and conclusive, and a judgment there against the validity of the mortgage would be an answer to any suit or proceeding commenced there or elsewhere to enforce the mortgage. Until an adjudication be had in that suit, the property cannot be removed or interfered with in opposition to the plaintiff's rights. The injunction in the foreclosure suit and the plaintiff's purchase, under his execution, are security against that.

I cannot see, therefore, that this action is at all necessary for the plaintiff's thorough protection. Equity disfavors a multiplicity of suits for the same substantial ends. If full relief can be had in one suit no other should be allowed ( *Vanderbilt* agt. *Vanderbilt*, 54 *How. Pr. R.*, 250).

While the pendency of the action in the courts of Connecticut may not in itself be a complete defense to a suit here, yet it affords a reason why a court of equity should not interfere by injunction, if complete redress may be had in the suit first instituted.

Nor, for the reasons above indicated, is the plaintiff entitled

to an affirmative judgment canceling the mortgage as void. The plaintiff's claim for such a judgment is founded upon his purchase made under his own execution. He purchased subject to what might be found due upon the mortgage.

The trustees and mortgagees, through their counsel, were present when the property was exposed for sale, and sold under such conditions and qualifications.

They had good reason to suppose, under such condition and qualification, that subsequent inquiry and scrutiny with respect to the mortgage would be, not as to its validity, but as to the amount due thereon, which, as Mr. Beers states, was not then known.

The plaintiff's counsel urges that he is entitled to be reinstated as to his lien on the corporate property, which he held under his attachment, which was, by arrangement, given up before the mortgage was made. I do not see how, in this suit, he can be so reinstated. But his position as a purchaser of the property for the price named gives him advantages greater than those he had before.

He is now the absolute owner of the property, subject to what may be due on the mortgage, for the price of seven dollars and fifty cents. He has his claim unsatisfied against the corporation — and should we here grant a judgment canceling the mortgage wholly, he would have the property and his claim in addition. This is much more than being restored to his lien under the attachment.

I am satisfied that the Connecticut action, in which the plaintiff intervened to procure an order to allow the sale under his execution, is the one in which the plaintiff should urge his objections to the validity of the mortgage, and that court, I am persuaded, will not be slow to give a just and equitable judgment in the premises.

I cannot think the plaintiff is entitled to the relief asked, and conclude that his complaint must be dismissed, with costs.